Mr. Bass, can you hear me all right? Yes, ma'am, I can. Yes, ma'am. Can you hear me? Yes, I can hear you fine. Is everybody else on the bench? I'm fine. I'm just I should know this, but where are you? I'm outside of the continent of the United States, your honor. You prefer not to say that. All right. So security matters. Yes. Now, it looks to me, I just want to make sure before you start that we have the clock right. There we go. And I don't know whether you can. Oh, yes. Seven minutes. Yes. Yes, ma'am. I can reverse seven for your for beginning. And why don't you go ahead now? May appease the court. My name is Robert Curtis Bass. Appearing before the court in proper persona. This is a case by myself. It's based on a closed district court case involving one of the oldest bank in Switzerland. The issues we're presented with on argument, your honors, is several issues. Not to promise not to convolute them at all. But I want to address what the reply brief that my adversaries submitted in response to my initial brief. And I would ask the court to seriously consider that that entire reply brief submitted by my adversary in the government should be viewed as invalid, null and void. Why do I say that? Well, we have an issue that arose on submission of my adversary's reply brief that involved the inclusion of a sealed plea agreement. Whereby there was no motion or request submitted on a district court level to unseal this plea agreement. It did not exist when I appeared before the district court. But it somehow made its inclusion into this court and submitted as part of my adversary's defense. Upon review, if I can ask the justices to go to my adversary's appeal brief. It's docket entry 28.1. It's page 21 of 36 of my adversary's reply brief. And if you look down on that page, there's just one specific condition that falls under the unconstitutional conditions doctrine. And it reads exactly, quote, Vagelin agrees it shall not file any petitions for remissions, restoration or any other assertion of ownership or request for return relating to seized amount or forfeited amount or any other action or motion seeking to collaterally attack the seizure, restraint, forfeiture or conveyance of the seized amount or forfeited amount. Nor shall it assist any others in filing any such claims, petitions and actions or motions. Now, that plea agreement is peppered with several examples of unconstitutional conditions doctrinal violations. And this court in 1988, the United States versus Ventura, this same court, the Second Circuit, ruled that appellate waivers are invalid. And that the court revised a guilty plea of Mr. Ventura and dismissed the indictment stating that plea agreements are contracts. And they cannot infringe on fundamental rights. And those are constitutional rights. Mr. Bass, I apologize for interrupting, but I confess that I'm.  I want to make sure I understand the thrust of what you're arguing now because it's not the argument I expected based on the brief. I thought based on the brief that you were going to tell us why the district court was wrong in declining you relief in your effort to appeal the denial of the remission from the attorney general. How does the argument that you're making now tie into that? How it ties in, it also ties in with the abuse of discretion, which is mentioned in my main brief initiated by the district court. The district court could have sui sponte decided to allow for reply brief to the government's reply in opposition to my motion for reconsideration. But the district court submitted an email to myself and the government's counsel stating approving the submission of a motion for reconsideration. But denying the right of a reply brief to the government's response. Now, under the district court's local rule, rule 26B, the district court specifically says in its own chamber rule that if there are two or more contentions or arguments inserted into the reply response, then I should have had been given the right to submit a reply brief. And what are the arguments that you would have made in that reply brief that now that you have an opportunity to make the arguments to us, you want us to make sure we understand? Yes, the arguments that would have been made in the reply to the government's opposition would have been a discovery of the forensic, the cyber forensic information that was obtained through a third party independent entity by which the government actually uses as a major cyber defense contractor, revealing that the government's website, forfeiture.gov, was inoperable and unavailable for public viewing for the entire year of 2013. By which, proving, in fact, that the notice of forfeiture that was attested to and submitted and certified by the government was invalid and a false attestation involving perjury because the notice of forfeiture was not published at all. You've made that argument on appeal now. And so one of the things I was trying to figure out, I said, okay, gosh, maybe there's something we need to understand further. So we've spent a fair amount of time trying to understand what we can and can't glean from the citations that you make to the Wayback Machine and to Pingdom. And so I want to make sure I do understand from you. Pingdom is a company that websites usually contract with themselves. And they say, monitor me from servers all around the world to make sure that I am accessible to them. So far, are we understanding?  Yes, ma'am. You're correct. When it does its monitoring, it does a ping from maybe one server here or one server there. But it doesn't, at every instance of monitoring, trigger all the servers all around the world. It sort of rotates them around. Am I misunderstanding? Theoretically, that is how Pingdom is set up. But in this case, with regard to the government site, forfeiture.gov, let's just say that there's not just one server or what we call a node in the industry. There could be an entire rack or several cabinets, and they could be placed all over the country or all over the world. Depending on where an individual would be logging in and accessing the website, then that particular network of servers in a particular region or location would be accessed. And depending on the speed and depending on authentication and embedded security, that person would be able to gain access. And the ping, yeah, they would basically knock on the door, and then an answer would come back, yes, we're available, and the website would come up. But these tests are done – I'm sorry because I'm a late person. I realize I'm talking to an expert. These tests are done sort of on components or individual servers, and the fact that you may not get a ping on an individual server at an individual time doesn't necessarily tell us that the government servers worldwide, or however widespread they are, through that entire year were down, right? I mean, it's giving us little snapshots. That's interesting that you bring that up. Huh? Yes, ma'am, that's interesting that you bring that up. I've worked in the industry on information systems security and network security, and I can attest as a cyber intelligence professional and expert, I've asked this. I didn't just depend on Pingdom or Wayback Machine. There are several different companies that provide the same types of services, and there are ways as a penetration tester to go into a network and conduct a multi-vector type of ping to see which ports are open, which servers are available to the public. In this particular case, I was literally on the tail end of my undergraduate studies in counterintelligence, and I wrote a paper because I conducted research on the government's industry-wide network servers, and guess what? In 2013, 2012, 2013, the entire government was involved in a major cyber attack, and forfeiture.gov was targeted specifically, and the website was not functioning. All the way until December. And I apologize because I've asked this question, but we're getting far beyond the record, and really what I wanted to try to see if you could translate into simpler terms for me is what it is we're supposed to understand from the things you did file in your motion for reconsideration. What is it that they tell us?  Yes, ma'am. But I think you've done that in your brief, and I see that we're a little bit over time, so knowing that we're going to get to hear from you again in reply, unless either of my colleagues has a question for you, we'll let you take a rest, and we'll hear from Mr. Weinberg and then come back to you. Yes, ma'am. Good afternoon. May it please the Court, my name is Matthew Weinberg, and I represent the government in this appeal, and I represented the government on this issue below. So this appeal should be denied. To the extent Mr. Bass's appeal relates to Judge Rakoff's decision to deny his petition for remission of forfeiture, or Judge Rakoff's decision to deny the motion to reconsider his decision, it must be denied because Judge Rakoff rightly concluded that there is no judicial review of a petition for remission of forfeiture. The case law is clear on this point. Remission of forfeiture is a non-judicial remedy, which is squarely within the discretion of the Attorney General. So if I understand Mr. Bass's move right, and maybe he can tell me if I'm wrong when we hear from him again, he pivoted at that point, once the district court reached the conclusion that you just described, and he said, okay, I'm going to challenge the lawfulness of the procedures of the underlying forfeiture, and I think that the proceedings underlying the forfeiture to begin with, before the money became part of the Attorney General's money to remit or not, they failed because they haven't provided, they never provided the notice that was required, even though they told us they did. That's correct, Your Honor. And that's at least reviewable by a court as an argument. It may not have legs, and it may be subject to time limits and other things, but that's not within the scope of the notion that we can't review the remission petition. That is correct. To the extent the appeal challenges the underlying forfeiture proceedings in this case, which I believe is what Your Honor is getting at, the appeal should still be denied, and in fact dismissed, for lack of standing. That's the second point the government makes in its brief. The forfeiture in this case, what was actually forfeited, which is about $15,821,000, was the gross fees paid to Waveland from 2002 through 2010 by United States taxpayers with undeclared accounts at Waveland. Mr. Bass has claimed, without providing support, but he has claimed that he had a $3.5 million bank account at Waveland. But he has not claimed any ownership or possessory interest of the gross fees that were paid to Waveland. Those are the fees that Waveland received from its customers and which Waveland forfeited to the government as part of the forfeiture order. And Mr. Bass has no standing to challenge the forfeiture of those funds. So the appeal should be denied for that reason, and dismissed for that reason. The government also notes, while there is no legal basis to reach the merits here, the court should take comfort, and I believe Your Honor's questions are driving at this, that the interests of justice here entirely support M. Larsen's decision to deny the petition for omission of forfeiture and that the forfeiture proceedings were conducted appropriately at the district court. So first, with respect to the merits or the interests of justice, Mr. Bass first sought relief nearly 10 years after the final order of forfeiture was publicly filed in this case and to this day has not submitted evidence establishing that he possessed an account at Waveland. And you referred to that as standing, but I gather that's not Article III standing. That's what sometimes gets, I think, lazily called statutory standing. He doesn't, he's not on the merits within the scope of the people the statute reaches. Is that, is that what you mean? Your Honor, I believe it is Article III standing. That's the Henry 655th Avenue case that the government cites. And I believe, you know, for Article III standing, a party must have suffered an injury. In fact, that is fairly traceable to the challenged action. And here, the forfeited funds were not Mr. Bass's bank account. The forfeited funds were Waveland's gross fees. Challenging forfeiture is challenging the government's forfeiture of the gross fees, and Mr. Bass does not have a claim to those gross fees. Has the bank remained solvent since then? I do not believe so, Your Honor. So if the bank went, was insolvent, I mean, I just, I'm thinking about the fungibility of money. Why wouldn't he have a claim that the money that was forfeited under the auspices of being the gross fees for those accounts essentially diminished my own ability to recover my dollars from my account, and that's the basis for my interest. I'm essentially a lien holder. So Mr. Bass could have a claim against the bank, and I understand. I'm not exactly sure the status of the bank. It is insolvent, but I don't know, you know, how feasible that would be. There could be a claim against the bank. But what Your Honor is describing is not something that he can redress through challenging the forfeiture. Okay, so the challenge, the forfeiture statute doesn't encompass lien holders. It actually encompasses people with an ownership interest in the property that's being forfeited. That's correct, Your Honor. Unless the court has any further questions, the government rests on its submissions. Thank you. Okay, Mr. Bass. Yes, Your Honor. I want to address the issue that you first discussed with when I brought up the unconditional conditions doctrine. The reasons that I want to provide to the court are why the government's argument should be considered inapplicable. Under the unconstitutional conditions doctrine, the government signed, the government initiated a plea agreement with Begelin and Company Private Bank, and that specific sentence that I read in the last paragraph stipulated that Begelin had to agree not to challenge or come back or have anyone on their behalf try to challenge the notice of forfeiture. Rule 60 of the Federal Rule of Civil Procedure and Rule 902 of the Federal Rules of Evidence doesn't absolve the government, and the court should just de facto trust that the government certified that their website was up and running. In addition, the unconditional doctrine applies to this particular case after review of the government's reply, because within that plea agreement, Begelin breached its contract with its declared account holders, admitting to federal criminal actions and activities, which was in breach of the agreement that each and every client signed with the bank, which is over 40 pages long. And by the way, you can't copy the agreement. When you receive it in the mail, you try to copy it. It's like all black pages. I don't know what kind of paperwork it's on. You have to send it back as is. And the reason why it took me 10 years is within the plea agreement. The government literally delayed and delayed and delayed and misdirected me. I tried to get lawyers to find out what was going on with the case. But in this particular instance, Begelin didn't have the contractual right under the plea bargain to plead guilty to criminal charges and assume that I would agree with waiving my right to due process and redress grievance to recover the money that I had to have on deposit. So for that reason, the government's argument is moved. The mere fact that they knew who I was. I spoke with the IRS senior criminal investigator. Nowhere in MLAR's decision, nowhere in the district court, nowhere in the government's pleadings do they deny that I was a client. They knew I was a client. They knew what the terms were to become a client of the oldest bank in Switzerland. And then they allowed, the reason why I can't file any documents to make any claims is because immediately, and this is a misstatement and an intentional omission that the government just shared with the court. The government seized $16,206,943.42 prior to the final notice of forfeiture. They got that money from UBS. Now, there's no discussion in the district court transcript of the seizure of that $16.2 million other than being placed in the plea agreement. But the district court just never even discussed it. So the final notice of forfeiture is for $15.8 million. My initial deposit was $3.5 million with interest at Fed Fund's compounded rate for 10 years amounts to $15.8 million. But now we have the $16.2 million that they seized without a court order violating federal law. That's law. $160 is unambiguous and non-vague. It's very clear. Can you tell me where, I feel as though your arguments, and I understand it happens, but the arguments that we're hearing now feel different to me from the arguments that you made in your brief. Am I missing, or can you point me to where in your brief you were missing? No, you're not missing anything. It was a discovery that was recently made based on my continued research of the government's claims. This is information that if it was, there's still nine sealed documents on the district court record that have not been unsealed. This is a closed case. So why are those records still sealed? And then the government shouldn't be allowed to submit a sealed plea agreement without a court order allowing it to be unsealed. But in the act of providing it to this court, they revealed that there was an unconstitutional condition put into the plea agreement depriving U.S. declared clients of their due process rights to recover any monies of interest or assets that they've managed and maintained. And I realize, again, you're not a lawyer, and this may not be a fair question, but before we let you go, because we've kept you beyond your time, and I'm sorry about that. Every question is fair, Your Honor. Every question is fair. The government is arguing that even if everything you're saying is true about what's happened, you are not within the class of people that the forfeiture statute recognizes as having the ability to come into court because your claim is in the nature of a lien holder or a debtor, not, you know, somebody could come into court, oh, that's my – you're forfeiting my husband's car, but it's really mine. You know, that kind of claim. You're not that person. Do you have a legal answer to that? And if not, I understand. Yes, ma'am. I do have a legal answer for that. And in this particular case, the plea agreement explains how the government deprived all lawful account holders of their lien holder, ownership, and custodial rights over any funds that Vagelin managed on behalf of their clients based on the contracts that Vagelin had with every single client. So the plea agreement, it explains it very clearly how they immediately engaged in this clandestine transfer of documents, and the district judge had questions about, and I have the list of who the other clients were and who could be affected from this case, and the government replied on the transcript, yeah, we'll get that to you, but we just want to proceed with the notice of forfeiture, final notice of forfeiture. Well, guess what? The government never supplied the list of who the four of their clients were. Okay. Never supplied the list. So there was no way of identifying. They knew who I was, but they didn't want the court to know who I was. Thank you, Mr. Bass. We appreciate your arguments. Unless my colleagues have questions, it doesn't look like they do. Appreciate it. Thank you both for your arguments. We'll take the case under advisement.